UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                         Court File No. 16-cr-256 (MJD/LIB)

          Plaintiff,

v.                                                               **REPORT AND RECOMMENDATION**

Carstie Lee Clausen,

          Defendant.

---

       This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Carstie Lee Clausen's ("Defendant") Pretrial Motion to Suppress Statements, Admissions, and Answers, [Docket No. 49], and upon Defendant's Pretrial Motion to Suppress Search and Seizure. [Docket No. 50]. The Court held a motions hearing on January 9, 2017, regarding the parties' pretrial motions.[1] At the motions hearing, the parties requested the opportunity to submit supplemental briefing, which was completed on February 9, 2017. Defendant's Pretrial Motion to Suppress Statements, Admissions, and Answers, [Docket No. 49], and his Pretrial Motion to Suppress Search and Seizure, [Docket No. 50], were then taken under advisement at that time.

       For reasons discussed herein, the Court recommends that Defendant's Pretrial Motion to Suppress Statements, Admissions, and Answers, [Docket No. 49], be **DENIED**, and that Defendant's Pretrial Motion to Suppress Search and Seizure, [Docket No. 50], be **DENIED**.

---

[1] The Court addressed the parties' pretrial motions for discovery and production of evidence by separate Order. [Docket No. 62].

I.      BACKGROUND AND STATEMENT OF FACTS

   A.  Background

   Defendant is charged with one count of assaulting a federal agent, in violation of 18 U.S.C. §§ 111(a) and 111(b); one count of damaging an aircraft in the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. § 32(a)(1); and one count of discharging a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Indictment [Docket No. 10]).

   B.  Facts

   The record presently before the Court indicates that on the morning of August 8, 2016, Minnesota State Pine to Prairie Task Force Special Agent Brandon Larson ("Agent Larson") and Federal Air Interdiction Agent Jeremy Kersey ("AIA Kersey") were in a helicopter flying over the property described as "45498 County Road 7, Clearbrook, MN in Clearwater County [and] [f]urther described as being located in Eddy Township, Section: 09, Township: 148, Range: 038." (Gov't Ex. 1 at ¶ 5).[2] While Agent Larson and AIA Kersey were flying in the helicopter over the described property attempting to identify a possible "marijuana grow operation," the helicopter was stuck by a bullet. (Id.).

   As a result of the bullet striking the helicopter, Agent Larson received an injury which, along with the damage to the helicopter, caused AIA Kersey to land the helicopter at the Fosston Airport located in Fosston, Minnesota. (Id. at ¶ 6). On August 8, 2016, at approximately 10:17 a.m., Task Force Officer Chris Benson ("Officer Benson")[3] received a phone call from

---

[2] Government's Exhibit 1 is the warrant application, supporting affidavit, receipt for property received, and warrant now at issue. At the motions hearing, the Government, without objection, offered the warrant application, supporting affidavit, receipt for property received, and warrant into evidence as Government's Exhibit 1. (January 9, 2017, Motions Hearing, Digital Recording at 1:43–1:44 p.m.).

[3] Officer Benson is an investigator with the Clearwater County Sheriff's Office who also serves as a Task Force Officer with the Federal Bureau of Investigations on the Safe Trails Task Force. (Id.).

Clearwater County Deputy Tom Davis ("Deputy Davis") informing Officer Benson that the helicopter had been fired upon with a high powered rifle, and Agent Larson had received injuries to his left arm and eyes. (Id. at ¶ 7). At approximately 10:20 a.m., Officer Benson also received a call from Agent Larson informing Officer Benson that the helicopter was fired upon by an unknown individual at the "Clausen residence." (Id. at ¶ 8). Agent Larson further informed Officer Benson that the agents had made three passes over the residence and property, but they had not observed anyone on the ground. (Id.). Agent Larson also told Officer Benson that the bullet which hit the helicopter shattered the window Agent Larson was looking out of causing glass shrapnel to spray into his eyes, left arm, and rib cage area. (Id.).

Upon receiving this information, Officer Benson, Chief Deputy Ryan Solee ("Deputy Solee"), Deputy Davis, and Clearwater County Deputy Clarence Lacroix responded to the address located at 45498 County Road 7, Clearbrook, Minnesota. (Id. at ¶ 9). After arriving at the residence, Officer Benson made contact with Defendant who inquired as to why law enforcement was at his residence. (Id.). Deputy Solee provided Defendant with a Miranda warning, and Defendant purportedly agreed to speak with law enforcement. (Id. at ¶ 10). It was also explained to Defendant why law enforcement was at his residence. (Id.). After conducting a protective sweep of the residence, law enforcement learned that Defendant was the only individual on the property. (Id.).

At the motions hearing, Deputy Solee testified that on initially responding to Defendant's residence four of the five officers were in full uniform, Officer Benson was in plain clothes wearing a vest with "Sheriff" written across the front of it, and all of the officers had their sidearms drawn. (January 9, 2017, Motions Hearing, Digital Recording at 1:47–1:48 p.m.).

Deputy Solee testified that the officers' sidearms were drawn because it was a "shots fired call," and that initially, their main concern was that Defendant was armed. (Id. at 1:47–1:49 p.m.).

Deputy Solee also testified that after he and Officer Benson did not locate Defendant in the residence they began approaching some vehicles, at which time Defendant emerged from the trees on his property. (Id. at 1:56–2:00 p.m.). After Defendant emerged from the trees, he was ordered to put his hands in the air and to move towards Officer Benson. (Id.). Defendant was then "pat searched," handcuffed in front of his body, and immediately given a Miranda warning. (Id. at 1:59–2:01 p.m.).[4] After acknowledging that he understood his rights, Defendant then agreed to speak with law enforcement at which time he and Deputy Solee began to speak to one another. (Id. at 1:48–1:50 p.m.).

As they began talking, Deputy Solee escorted Defendant back to Deputy Solee's vehicle so that the two could talk in a more quite setting. (Id. at 1:50–1:55 p.m.). The initial, brief interaction between Deputy Solee and Defendant, before they reached Deputy Solee's vehicle, was not recorded. (Id. at 2:00–2:02 p.m.). Once Deputy Solee and Defendant reached the vehicle, Deputy Solee began recording the conversation, and he continued to record the conversation until it ended. (Def.'s Ex. 1).[5]

Deputy Solee began the recorded portion of the interview by acknowledging he was recording the interview and giving the date and time. (Id. at 0:00–0:16). Deputy Solee then asked

---

[4] Deputy Sole testified that he administered the Miranda warning to Defendant from memory. (Id. at 1:48–1:49 p.m.). When asked what warning he gave Defendant, Deputy Solee testified that he stated "that he has the right to remain silent; anything he says can and will be held against him in a court of law; he has a right to have an attorney; he has a right to have that attorney present during questioning; if he cannot afford an attorney one will be provided to him at no cost[.]" (Id.).

[5] Defendant's Exhibit 1 is the audio of the recorded portion of Deputy Solee's interview of Defendant. At the motions hearing, the Defense counsel, without objection, offered the audio of the recorded portion of Deputy Solee's interview of Defendant into evidence as Defendant's Exhibit 1. (January 9, 2017, Motions Hearing, Digital Recording at 2:02–2:03 p.m.).

Defendant "before we turned this on I gave you the <u>Miranda</u> warning, correct" to which Defendant affirmatively responded that Deputy Solee had previously given him a <u>Miranda</u> warning. (<u>Id.</u> at 0:16–0:38). Deputy Solee then reminded Defendant that while the two were previously talking before the recording Deputy Solee had explained to Defendant why law enforcement was at Defendant's residence about the helicopter, and Defendant had started telling Deputy Solee "what was going on." (<u>Id.</u> at 0:16–0:53). Deputy Solee said he was still curious about what happened, and he asked Defendant to continue explaining it. (<u>Id.</u>).

Defendant then stated that the helicopter, which he also said lacked any law enforcement insignia, flew around his house three or four times which he felt was a threat to his personal safety, so he pointed his fingers at it. (<u>Id.</u> at 0:53–1:30). When Deputy Solee asked if that was why Defendant shot at the helicopter, Defendant stated that he did not remember anything like that happening, and that his gun was stolen in 2002. (<u>Id.</u> at 0:53–2:20). Deputy Solee continued to ask Defendant about the pointing of a firearm at the helicopter due to Defendant feeling threatened which Defendant did not admit to doing, and they discussed the ownership of the helicopter, as well as, its purpose that day. (<u>Id.</u> at 2:20–5:08). Defendant discussed the jurisdiction of the helicopter and a burglary that occurred at Defendant's residence in 2002. (<u>Id.</u> at 5:08–6:48). Defendant expressed concern that, after law enforcement left his residence that day, others would come to his house to burglarize it as he alleged had happened in 2002 when law enforcement had also searched his residence and left it "open." (<u>Id.</u>).

Deputy Solee asked Defendant if he was "going to stand by" his statement that Defendant did not shoot at the helicopter. (<u>Id.</u> at 7:00–7:37). Defendant responded that the answer to that question was "for a court of law to decide if such matters arise." (<u>Id.</u>). Deputy Solee then asked if there was anything Defendant would like to add to his statement to which Defendant responded

that he was a little thirsty and still concerned that his house would be "sitting open" after law enforcement left and there could be a repeat of the burglary that happened in 2002 when Defendant was "under lock and key." (Id. at 7:37–8:16). Deputy Solee then told Defendant that he understood the situation Defendant was in and that he understood that he felt threatened when the helicopter flew over multiple times, but that he did not understand Defendant only pointing his finger at the helicopter when he felt threatened.  (Id. at 8:16–10:25). Defendant responded that he "could have pointed a stick or hoe if they were handy, I've done that in the past with shovels, sticks, hoes, when planes fly over and over and they're not dusting crops or something, but for all I know this was an outlaw operation." (Id. at 10:25–10:55).

Deputy Solee then stated that pointing a stick or hoe at the helicopter would not shatter a window, explained to Defendant that a window had been shattered in the helicopter that day, and informed Defendant that a bullet was located inside the helicopter. (Id. at 10:55–12:34). Deputy Solee also explained to Defendant that the next step was for law enforcement to look for the firearm on the property so law enforcement could compare it to the bullet found in the helicopter. (Id.). After Deputy Solee explained that he was only attempting to understand the situation, the following exchange took place:

| | |
|---|---|
| Deputy Solee: | All I am asking you to do is to help me out so I don't have to tear up [Defendant's] property, cause I don't want to have to do that cause here is what I think happened (interrupted) |
| Defendant: | Is that a promise that the rest of my property in my house will not be ransacked. I don't know how much the law enforcement people did thirteen years ago roughly or how much was done by burglars afterwards. I know that I found out afterwards that at least one of the burglars was a well known snitch. |
| Deputy Solee: | Well here's the deal, you have my word that I will stay here and make sure that your house isn't ransacked. |
| Defendant: | Stay here for how long? |

| Deputy Solee: | Until they're done looking. |
|---|---|
| Defendant: | Done looking? |
| Deputy Solee: | For the firearm. |
| Defendant: | For the firearm. |
| Deputy Solee: | Ok, but if it is out there in the woods about where you came out of (interrupted) |
| Defendant: | No, It's not out in the woods |
| Deputy Solee: | Where is it at then sir? |
| Defendant: | Ok, we'll take a walk then. |
| Deputy Solee: | I can't let you by the firearm sir, not with all these people around. |
| Defendant: | I am not going to touch it. I am simply going to point out a location. |
| Deputy Solee: | Ok, we can do that. |

(Id. at 12:34–14:30). Before Deputy Solee and Defendant began walking to the residence to locate the firearm, Deputy Solee again asked Defendant if he fired a shot at the helicopter to which Defendant responded that he would show Deputy Solee were the firearm was but that was "as far as we'll take that." (Id. at 14:30–15:00). Defendant then led law enforcement into his residence and pointed out the location of the rifle. Deputy Solee then walked Defendant back to the law enforcement vehicles, placed Defendant into Officer Benson's vehicle for transport, and concluded the interview. (Id. at 15:00–26:00).

At the motions hearing, Deputy Solee testified that, Defendant was handcuffed in front of his body during the entirety of his interview and that he was under formal arrest from the initial contact with law enforcement. (January 9, 2016, Motions Hearing, Digital Recording at 1:59–2:00 p.m.). No threats were made to Defendant during the interview, and at no time during the

interview did the officers raise their voices to Defendant. (Id. at 1:50–1:51 p.m.; Def.'s Ex. 1). Defendant's demeanor during the course of the interview and the encounter in general appeared responsive and cooperative. (Def.'s Ex. 1). During the interview, Defendant was seated in the front passenger seat of Deputy Solee's truck with the door shut. (January 9, 2016, Motions Hearing, Digital Recording at 1:59–2:02 p.m.). Deputy Solee was the only other person in the truck although approximately twelve officers total were on Defendant's property. (Id.).

Deputy Solee testified that Defendant appeared to be an adult in his late sixties who could articulate himself well with no apparent physical or mental conditions. (Id. at 1:49–1:51 p.m.). Deputy Solee also testified that, at the time of the interview, Defendant did not appear to be under the influence of drugs or alcohol, stated that he understood his rights, indicated that he understood why law enforcement was at his residence, did not appear to be in any apparent stress, and agreed to give a statement to Deputy Solee. (Id. at 1:49–1:52 p.m.).

On August 8, 2016, Officer Benson drafted an application for a warrant to search the premises described as "45498 County Road 7, Clearbrook, MN in Clearwater County [and] [f]urther described as being located in Eddy Township, Section: 09, Township: 148, Range: 038;" as well as a "Green Pontiac Grand AM GT with MN Plate 367HTR;" and a "Blue Ford 150 Pickup single cab with MN Plate 980 HLB." (Id.). Officer Benson's affidavit in support of the application for the search warrant now at issue contained a summary of Officer Benson's qualifications, as well as, the details of the helicopter being struck by a bullet and law enforcement's preliminary contact with Defendant at his residence. (Id.).

In his affidavit, Officer Benson attested that during the onsite interview with Defendant, Defendant stated that he had observed a helicopter flying over his property at an altitude of about

two hundred feet. (Id. at ¶ 10).[6] Officer Benson also attested that Defendant described going outside when he saw the helicopter "and using finger pistols with both hands pointing at the helicopter" the first time it flew over Defendant's residence; pointing a rake and hoe at the helicopter, as if they were rifles, the second time the helicopter flew over; and pointing a rifle at the helicopter the third time it flew over. (Id.). Officer Benson averred that Defendant told law enforcement that it was the job of law enforcement to figure out if he had shot at the helicopter. (Id.). Lastly, Officer Benson attested that Defendant "voluntarily identified the lever action rifle and explained its location to law enforcement." (Id.).

On August 8, 2016, the Honorable Jon Huseby, United States Magistrate Judge for the District of Minnesota, determined that probable cause supported the issuance of the search warrant presently at issue. (Gov't Ex. 1). That search warrant authorized a search for firearms, including but not limited to a 30/30 lever action rifle; ammunition; spent casings and brass; United States mail to identify the resident; identification documents, including utility bills; marijuana and marijuana plants; packing material; electronic scales or measuring devices; business records; and drug paraphernalia. (Id.).

That same day, on August 8, 2016, law enforcement executed the search warrant now at issue. (Id.). The Receipt for Property Seized attached to the search warrant now at issue indicates that during the execution of the search warrant law enforcement seized a 30/30 cartridge case, a Winchester Model 94 30/30 rifle with serial number 3266037, a 30/30 cartridge, and two green leafy substances. (Id.).

---

[6] Defendant indicated the altitude by pointing to a tree that was approximately one hundred feet tall and stating that the helicopter flew over at about two times the tree height. (Id.).

## II.    DEFENDANT'S PRETRIAL MOTION TO SUPPRESS STATEMENTS, ADMISSIONS, AND ANSWERS. [DOCKET NO. 49].

Defendant moves this Court for an Order suppressing all the statements he made on August 8, 2016. (See, Def.'s Pretrial Mot. to Suppress Statement, Admissions, and Answers [Docket No. 49]).

In support of his motion to suppress his statements made before he was placed in Deputy Solee's vehicle, Defendant argues that he was not provided with a Miranda warning, and therefore, the statements he made before being placed in Deputy Solee's vehicle and being provided with a Miranda warning should be suppressed. (See, Id.). In support of his motion to suppress the statements he made during the recorded potion of the interview in Deputy Solee's vehicle, Defendant contends that the recorded interview was tainted as "fruit of the poisonous tree" of the interview before the recording started and before Defendant was provided with a Miranda warning, and therefore, the recorded portion of the interview must also be suppressed. Defendant argues that Deputy Solee first questioned Defendant without providing a Miranda warning, began the recording, then provided Defendant with a Miranda warning, and then continued to question Defendant about the same topics he had questioned Defendant about before providing Defendant with a Miranda warning. (See, Id.).[7] Defendant argues that "law enforcement employed the 'question first' method of interrogation in order to obtain incriminating admissions from [Defendant] before he was placed in Deputy Solee's vehicle and before everything was being recorded." (Id. at 10–11).

---

[7] Defendant's arguments are predicated on the incorrect factual assumption that he was not provided with a Miranda warning until the recorded portion of the interview began at Deputy Solee's vehicle. (See, Id. at 10) ("In the case at hand, the government has not explained why Chief Deputy Solee, a certified police officer of seven years, failed to provide Mr. Clausen with a *Miranda* warning before speaking with him in an unrecorded conversation.").

### A.  Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). "Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005) (quoting Rhode Island v. Innis, 466 U.S. 291, 300–01 (1980)).

A defendant may waive the Miranda rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.

### B.  Analysis

Defendant addresses the statements he seeks to suppress in two categories: (1) the statements Defendant made before the digital recording began and (2) the statements he made during the digitally recorder portion of the interview. However, Defendant's arguments regarding the suppression of both categories is predicated on the contention that Defendant was not provided with a Miranda warning until after he was placed in Deputy Solee's vehicle where the recorded portion of the interview began. Defendant does not address the evidence in the

record which demonstrates that Defendant was provided with a <u>Miranda</u> warning upon initial contact well before any questioning by Deputy Solee or discussion with Defendant began.

Besides merely arguing that he was not provided a <u>Miranda</u> warning before his questioning began, Defendant presents no other basis for why his statements on August 8, 2016, should be suppressed. The present record before the Court, however, clearly shows that Defendant was provided with a <u>Miranda</u> warning before any interrogation or questioning of Defendant by Deputy Solee took place.

Deputy Solee testified that upon law enforcement's initial contact with Defendant when he walked out of the trees on his property, Defendant was "pat searched," handcuffed in front of his body, and **immediately** given a <u>Miranda</u> warning. (January 9, 2017, Motions Hearing, Digital Recording at 1:59–2:01 p.m.). Deputy Sole testified that he administered the <u>Miranda</u> warning to Defendant from memory. (<u>Id.</u> at 1:48–1:49 p.m.). When asked what warning he gave Defendant, Deputy Solee testified that he stated "that he has the right to remain silent; anything he says can and will be held against him in a court of law; he has a right to have an attorney; he has a right to have that attorney present during questioning; if he cannot afford an attorney one will be provided to him at no cost[.]" (<u>Id.</u>).[8] After acknowledging that he understood his rights, Defendant then agreed to speak with law enforcement at which time he and Deputy Solee began to speak to one another. (<u>Id.</u> at 1:48–1:50 p.m.). Moreover, upon initiation of the recorded portion of the interview between Deputy Solee and Defendant, Deputy Solee reviewed with Defendant that "before we turned this on I gave you the <u>Miranda</u> warning, correct" to which Defendant affirmatively responded. (Def.'s Ex. 1 at 0:16–0:38). Defendant has pointed to no evidence which negates the evidence on the record that Defendant was provided with a <u>Miranda</u>

---

[8] Defendant does not challenge the adequacy or accuracy of the <u>Miranda</u> warning Deputy Solee provided from memory.

warning upon his initial contact with law enforcement and before any interrogation of Defendant by Deputy Solee took place.

For these reasons alone, Defendant's Pretrial Motion to Suppress Statements, Admission, and Answers, [Docket No. 49], could be denied. The Court, however, in an abundance of caution will more fully analyze the record now before the Court pursuant to Miranda.

As previously noted, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury, 511 U.S. at 322 (quoting Miranda, 384 U.S. at 444). To be subject to suppression under Miranda, however, a statement must be made while in custody and in response to interrogation. United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009) (citing United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005)).

It is undisputed that Deputy Solee's express questioning of Defendant on August 8, 2016, constituted interrogation. It is also undisputed that Defendant was in custody for the purpose of Miranda at the time of the August 8, 2016, interview by Deputy Solee. Moreover, as noted above, it is clear on the present record that Defendant was provided a Miranda warning upon his initial contact with law enforcement and in any event before an interrogation of Defendant by Deputy Solee took place.

Accordingly, the only possible remaining issues before the Court regarding Defendant's August 8, 2016, interview is whether Defendant's waiver of his rights was made intelligently, knowingly and voluntarily.

Before a statement procured through custodial interrogation can be admitted in court, the Government must demonstrate that a defendant's wavier of his Miranda rights was made intelligently, knowingly, and voluntarily. Miranda, 384 U.S. at 444, 475. The validity of a

<u>Miranda</u> waiver requires consideration of two distinct inquiries, namely whether the waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]" and whether the waiver was knowingly and intelligently made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>United States v. Vinton</u>, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)). "The government has the burden of proving the validity of the <u>Miranda</u> waiver by a preponderance of the evidence." <u>United States v. Haggard</u>, 368 F.3d 1020, 1024 (8th Cir. 2004).

### 1. Voluntariness

Courts assess whether a waiver of the Miranda rights was made voluntarily by considering "the conduct of law enforcement officials and the suspect's capacity to resist any pressure." <u>United States v. Contreras</u>, 372 F.3d 974, 978 (8th Cir. 2004). The United States Supreme Court has previously explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was <u>involuntary</u> and not as bearing on the separate question whether the waiver was knowing and intelligent." <u>United States v. Turner</u>, 157 F.3d 552, 555 (8th Cir.1998) (quoting <u>United States v. Bradshaw</u>, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver was made voluntarily, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." <u>United States v. Syslo</u>, 303 F.3d 860, 866 (8th Cir. 2002). In considering the totality of the circumstances, a court reviews whether the statement was "extracted by threats, violence, or

direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Sanchez, 614 F.3d 876, 883 (8th Cir. 2010) (internal quotation marks and citations omitted). "More specifically, [a court] consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (citing Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004)).

Defendant does not point in his moving papers to any particular factor which renders his Miranda waiver involuntary. Defendant offers no specific argument in his moving papers that the officers engaged in any specific coercive tactics that caused his will to be overborne during the interview. In fact, the Court's independent review of the audio recording of the August 8, 2016, interview indicates that the officers did not engage in coercive tactics. See, United States v. Mims, 567 F. Supp. 2d 1059, 1080 (D. Minn. 2008) (holding Miranda waiver voluntary where, among other factors, interview was conducted in a reasonable, conversational tone); see also, United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (concluding no coercive tactics were used where, among other things, officers made no threats or promises to the defendant). Throughout the interview, Deputy Solee maintained a conversational tone and made no threats or promises to Defendant in exchange for Defendant's waiver of his rights pursuant to Miranda.

While Deputy Solee told Defendant that he needed the location of the firearm so that he did not have to "tear up" Defendant's property, he also agreed to stay at Defendant's property during the search for the firearm to ensure that the Defendant's property was not ransacked. Moreover, this exchange between Deputy Solee and Defendant occurred well after Defendant had already been provided with a Miranda warning and Defendant had agreed to speak with Deputy Solee. Further, the Court's review of the audio recording shows that Defendant spoke

willingly and cooperatively with Deputy Solee. The interview, which lasted only approximately thirty to forty minutes,[9] was also not coercive in its duration. See, Makes Room, 49 F.3d at 415 (noting that interrogation lasting more than two hours was not coercive in duration). Although, Defendant was restrained with handcuffs, he was restrained with his hands in front of his body, and he was allowed to sit in the front seat of the police vehicle. Finally, Defendant's repeated refusal to admit to firing a weapon at the helicopter—in the face of Deputy Solee expressing to Defendant several times that he found his answer unbelievable—is itself some indication of Defendant's personal resolve and that his will was not overborne by Deputy Solee's conduct.

Based on the foregoing, and under the totality of the circumstances, the Court concludes that Defendant's waiver of his rights was voluntary.

## 2. Knowing and Intelligent

Next, the Court must consider whether Defendant's waiver of his Miranda rights was knowingly and intelligently made. Vinton, 631 F.3d at 483. The evidence in the record regarding Defendant's understanding of his rights and presence of mind during the August 8, 2016, interview consists of the audio recording of the interview and Deputy Solee's hearing testimony.

Defendant offers no specific argument in his motions papers that his August 8, 2016, rights waiver pursuant to Miranda was not made knowingly and intelligently.

In the present record, there is again ample evidence related to the August 8, 2016, interview—including the audio recording of the interview and the hearing testimony of Deputy Solee—for the Court to determine that Defendant's waiver of his rights prior to the August 8, 2016, interview was knowing and intelligent.

---

[9] The exact length of the interview is unknown as the initial portion of the interview was not recorded. It is, however, unlikely that the interview lasted longer than forty minutes as it was only fifty minutes from the time law enforcement initially arrived at Defendant's residence and the time the recorded interview concluded. (See, January 9, 2017, Motions Hearing, Digital Recording at 1:56–1:56 p.m.; 2:01–2:03 p.m.; Def.'s Ex. 1).

On the present record, the Defendant appeared to fully comprehend the conversation, understood the situation, understood the questions being asked of him, and provided contextually appropriate answers. Defendant' coherency is also evident in some respects by his repeated refusal to admit to the offense Deputy Solee believed Defendant had committed. As previously noted, Defendant's demeanor during the interview was responsive and cooperative. The audio recording, further, provides that upon initiation of the recording Deputy Solee verified with Defendant that Defendant had previously been provided with a <u>Miranda</u> warning. Defendant affirmatively acknowledged that he had been provided with a <u>Miranda</u> warning, and he again agreed to continue to speak with Deputy Solee.

Furthermore, at the motions hearing Deputy Solee offered testimony that Defendant, at the time of the interview, appeared fine and coherent with no indication that Defendant was under the influence of any drugs or alcohol or that he failed to understand any of what was transpiring during the interview on August 8, 2016.

Therefore, under the totality of the circumstances, the Court concludes that Defendant's waiver of his rights was both knowing and intelligent.

Based on the foregoing, the Court recommends **DENYING** Defendant's Pretrial Motion to Suppress Statements, Admission, and Answers. [Docket No. 49].

## III.    DEFENDANT'S PRETRIAL MOTION TO SUPPRESS SEARCH AND SEIZURE. [DOCKET NO. 50].

Defendant moves the Court for an Order suppressing any evidence obtained as a result of the August 8, 2016, execution of the search warrant for the premises described as "45498 County Road 7, Clearbrook, MN in Clearwater County [and] [f]urther described as being located in Eddy Township, Section: 09, Township: 148, Range: 038[.]" (<u>See</u>, Def.'s Pretrial Mot. to Suppress Search and Seizure [Docket No. 50]).

17

**A. Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09–cr–239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting

United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)) (alterations in Wiley). In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

### B. Analysis

In support of his Pretrial Motion to Suppress Search and Seizure, [Docket No. 50], Defendant argues that Officer Benson knowingly and intentionally, or with a reckless disregard for the truth exaggerated Defendant's statement to the point of falsehood in an effort to bolster probable cause in Officer Benson's affidavit in support of the search warrant application. Therefore, Defendant argues, the false statement in the affidavit must be deleted pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Without the delete statements, Defendant further argues, the affidavit does not support a finding of probable cause.

### 1. Defendant's Franks Argument

In Franks, the United States Supreme Court emphasized the presumptive validity of a warrant affidavit but held that:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable case, the Fourth Amendment requires that a hearing be held **at the defendant's request**.

438 U.S. at 155–56 (emphasis added). In the present case, Defendant has made no request for a Franks hearing, and no such hearing has taken place. Nevertheless, without moving this Court for a Franks hearing or any mention of a desired Franks hearing at the January 9, 2017, motions

hearing in the present case, Defendant presents an argument pursuant to <u>Franks</u> in his memorandum in support of his present motion to suppress search and seizure evidence. Defendant has provided no authority, and the Court has found no authority, which would allow Defendant to make his <u>Franks</u> argument in this procedural manner. The Court, however, in an abundance of caution, will consider Defendant's argument on the present limited record.

To receive a <u>Franks</u> hearing, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit." <u>United States v. Jacobs</u>, 986 F.2d 1231, 1233–34 (8th Cir. 1993) (quoting <u>Franks</u>, 438 U.S. at 155–56). "[I]f the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." <u>Id.</u> The "substantial preliminary showing" requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements. <u>See</u>, <u>United States v. Gonzalez</u>, 781 F.3d 422, 430 (8th Cir. 2015) (citing <u>United States v. Williams</u>, 477 F.3d 554, 558 (8th Cir. 2007)); <u>United States v. Gabrio</u>, 295 F.3d 880, 883 (8th Cir. 2002). "Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." <u>United States v. Snyder</u>, 511 F.3d 813, 816 (8th Cir. 2008) (citing <u>Franks</u>, 438 U.S. at 171; <u>United States v. Davis</u>, 471 F.3d 938, 946 (8th Cir. 2006)).

Defendant's sole argument here is his conclusory assertion that Officer Benson knowingly and intentionally, or with a reckless disregard for the truth stated in his affidavit that Defendant described going outside when he saw the helicopter "and using finger pistols with both hands pointing at the helicopter" the first time it flew over Defendant's residence; pointing a rake and hoe at the helicopter, as if they were rifles, the second time the helicopter flew over;

and pointing a rifle at the helicopter the third time it flew over when in fact Defendant did not make such statements during the recorded portion of the interview with Deputy Solee. (See, Def. Mem., [Docket No. 64], at 12–15). During the recorded portion of the Deputy Solee interview, Defendant can be heard to state that he pointed his fingers at the helicopter, and that he could have pointed a stick or hoe at the helicopter if he had those items nearby because he had pointed those items at planes in the past. On the present record before the Court, however, Defendant's argument fails to establish the substantial preliminary showing—that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by Officer Benson in the warrant affidavit—necessary to warrant a Franks hearing.

First, on the present limited record, Defendant has failed to show that Officer Benson's statement in his affidavit was in fact false. As Defendant acknowledges, and as the record makes clear, only a portion of the interview with Defendant was recorded. At the motions hearing, Deputy Solee was not specifically questioned about the content of Defendant's statements to Deputy Solee after the initial Miranda warning but before the recorded interview began, nor about any statements Defendant made to Officer Benson before the recorded interview began. No testimony was obtained from Officer Bensons at all which means the present record lacks any testimony about the origin of Officer Benson's statement that Defendant described pointing his fingers, garden tools, and a rifle at the helicopter. On this limited record, the Court cannot even determine the veracity of Officer Benson's statement in the affidavit.

Second, assuming only for the sake of argument, that Officer Benson's statement in his affidavit regarding Defendant's description of the events that transpired was inaccurate, Defendant has failed to establish that the inclusion of that statement was not mere negligence or an innocent mistake. If the statement was included through negligence or innocent mistake,

Defendant would be unable to demonstrate reckless or deliberate falsehood. See, Snyder, 511 F.3d at 816. As noted above, there has been no testimony from Officer Benson regarding the basis of his statement that Defendant described going outside when he saw the helicopter "and using finger pistols with both hands pointing at the helicopter" the first time it flew over Defendant's residence; pointing a rake and hoe at the helicopter, as if they were rifles, the second time the helicopter flew over; and pointing a rifle at the helicopter the third time it flew over.[10] Defendant has provided no evidence suggesting that the possible misrepresentations were deliberate or reckless. See, United States v. Kattaria, 553 F.3d 1171, 1177 (8th Cir. 2009) ("Mere allegations of deliberate or reckless falsehoods are insufficient."); United States v. Mathison, 157 F.3d 541, 548 (8th Cir. 1998) ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing [under Franks]."); Franks, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."); see also, United States v. Engler, 521 F.3d 965, 970 (8th Cir. 2008) (affirming denial of Franks hearing requested on basis of officer's omission, noting that defendant made "assertions without any supporting proof that there [were] accurate . . . provided no evidence to establish that . . . officers deliberately or recklessly omitted information . . . [and] did not provide an explanation for the absence of such evidence."). As the present record contains no testimony of Officer Benson regarding the statement, the Court cannot speculate as to the basis for Officer Benson's statement in his affidavit.

---

[10] Officer Benson could have misheard the report from Deputy Solee or misheard the recorded interview, if he did listen to the recording of the interview before drafting the affidavit.

On the limited record presently before the Court, Defendant has failed to establish a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the Officer Benson in the warrant affidavit.

Therefore, the Court finds that Defendant has failed to meet even the threshold showing that a Franks hearing is required, and he has failed to rebut the presumptive validity of Officer Benson's affidavit in support of the search warrant now at issue.

### 2. The Sufficiency of Probable Cause in the Search Warrant Affidavit

Having determined that Defendant has failed to rebut the presumptive validity of Officer Benson's affidavit, the Court must now determine if the search warrant application as presented to Judge Huseby provided Judge Huseby with a substantial basis on which to conclude that probable cause existed to issue the search warrant now at issue. Aside from Defendant's <u>Franks</u> argument already discussed and denied above, Defendant offers no other argument as to why the affidavit in support of the August 8, 2016, search warrant failed to provide the issuing Judge with a substantial basis on which to conclude that probable cause existed to issue the search warrant now at issue.

The affidavit in support of the application for the search warrant in the present case contained information that a helicopter flying over the property described in the affidavit was struck by a bullet, that a federal officer was injured when that bullet struck the helicopter, and that upon law enforcement's arrival at the residence described in the affidavit, Defendant was the only person located on the property. Moreover, the affidavit provided that Defendant, after being provided with a <u>Miranda</u> warning, described going outside when he saw the helicopter "and using finger pistols with both hands pointing at the helicopter" the first time it flew over Defendant's residence; pointing a rake and hoe at the helicopter, as if they were rifles, the second

time the helicopter flew over; and pointing a rifle at the helicopter the third time it flew over.[11] The affidavit also provided that after Defendant told law enforcement it was their job to figure out if he had shot at the helicopter, Defendant voluntarily identified a lever action rifle and explained its location to law enforcement. Judge Huseby was provided with information that a helicopter was shot over the property to be searched and that Defendant, who was the only person on said property, had explained the location of a lever action rifle to law enforcement. Based on the foregoing, Judge Huseby had a substantial basis to conclude that there was a reasonable probability that evidence of a crime could be found at the property described in the affidavit.

In addition, assuming solely for the sake of argument that the affidavit of Officer Benson was not sufficient to establish probable cause, the Court concludes that officers relied in good faith on the probable cause determination by the issuing Judge when executing the August 8, 2016, warrant and searching the property now at issue. See, United States v. Leon, 468 U.S. 897, 922 (1984). Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing Leon, 468 U.S. at 922).

There are four circumstances in which the good-faith exception does not apply:

 (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

---

[11] On the present record, there would be probable cause to search Defendant's property and residence even if the statement in the supporting affidavit to the effect that on the third pass of the helicopter the Defendant pointed a rifle at the aircraft were excluded from consideration.

United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001) (quoting Leon, 468 U.S. at 922). Here, Defendant contends that the first circumstance applies. Defendant restates his argument pursuant to Franks v. Delaware, 438 U.S. 154 (1978), arguing that Judge Huseby was misled by Officer Benson's false statement and that that once Officer Benson's "false" statement is delete from the affidavit, the remaining content is insufficient to establish probable cause. The Court again disagrees.

The Court has already determined that Defendant's late made argument under Franks fails to rebut the presumptive truthfulness of Officer Benson's affidavit on the present record before the Court. Accordingly, the affidavit in support of the August 8, 2016, search warrant authorizing the search of Defendant's property did not mislead the issuing Judge by containing "statements made by the affiant that were [knowingly or intentionally] false or made in reckless disregard for the truth." Moreover, the Court has already determined that the affidavit correctly provided that Defendant acknowledged pointing his fingers like a pistol at the helicopter, that he could have pointed a rake or hoe handle like a rifle at the helicopter, that the helicopter was struck with a bullet as it was over Defendant's property, that Defendant was the only person on the property, that Defendant voluntarily explained the location of a rifle on his property to law enforcement, and that before showing the location of the rifle when asked if he shot at the helicopter, Defendant said it was law enforcement's job to figure out if he had done so.

The record currently before the Court shows law enforcement's good-faith reliance on August 8, 2016, in executing the warrant issued to search Defendant's property as described in the warrant, and therefore, it militates against suppressing the evidence obtained during the August 8, 2016, search of the Defendant's property.

Accordingly, the affidavit in support of the August 8, 2016, search warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In addition, the affidavit in support of the warrant, for all the reasons stated herein, did not render the warrant "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

Because the Court finds that the issuing Judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the August 8, 2016, search warrant, the Court recommends Defendant's Pretrial Motion to Suppress Search and Seizure, [Docket No. 50], be **DENIED**.

## IV.    CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Defendant's Pretrial Motion to Suppress Statements, Admission, and Answers, [Docket No. 49], be **DENIED**; and

2.  Defendant's Pretrial Motion to Suppress Search and Seizure, [Docket No. 50], be **DENIED**.

Dated: February 27, 2017                                  s/Leo I. Brisbois_____
                                                          Leo I. Brisbois
                                                          U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.