# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

   Plaintiff,

v.          **MEMORANDUM OF LAW & ORDER**
           Criminal File No. 16-256 (MJD/LIB)

(1) CARSTIE LEE CLAUSEN,

   Defendant.

Clifford B. Wardlaw, Assistant United States Attorney, Counsel for Plaintiff.

Douglas L. Micko, Office of the Federal Defender, Counsel for Defendant.

## I. INTRODUCTION

This matter is before the Court on the Government's request for an Amended Judgment including restitution in the amount of $19,619.45. [Docket No. 152] Defendant opposes this request. [Docket No. 153]

## II. BACKGROUND

On June 20, 2017, Defendant Carstie Lee Clausen pled guilty to Count 1 of the Indictment, Assault of a Federal Agent, in violation of 18 U.S.C. §§ 111(a), (b), and Count 2 of the Indictment, Damaging an Aircraft in the Special Aircraft

1

Jurisdiction of the United States, in violation of 18 U.S.C. § 32(a)(1). On June 26, 2017, the Court held an evidentiary hearing in anticipation of sentencing.

On November 29, 2017, the Court sentenced Defendant to 60 months imprisonment. [Docket Nos. 131-32] During the sentencing hearing, the Government requested restitution in excess of $19,000 to the United States Government for the damage to the helicopter and $300 to victim Brandon Larson for the damage to his clothing and boots. (Sentencing Tr. 13.) The Court kept the restitution amount open so that defense counsel could verify the cost of the repairs to the helicopter. (Id. 14.)

On March 6, 2018, the Government filed a request for a final amended Judgment to include restitution in the amount of $19,619.45, as listed in Paragraph 14 of the Presentence Investigation Report ("PSR"). [Docket No. 152]

III. DISCUSSION

    A.     **Evidence Presented**

During the evidentiary hearing, U.S. Customs and Border Protection air interdiction agent Jeremy Kersey testified about the damage done to the helicopter when Defendant shot it and about his need to make an emergency landing at the Fosston, Minnesota, airport after the helicopter was shot. (Evid. Hearing Tr. 12-15, 18-22.)

U.S. Customs and Border Protection aviation maintenance officer John Clark testified regarding the damage to the helicopter and explained that the Government hired a contractor to work on the damaged helicopter. (Evid. Hearing Tr. 53-54.) The Government "had to hire a trucking outfit with a local trailer to come out and haul [the damaged helicopter] back to Grand Forks" from Fosston, where it made the emergency landing. (Id. 55.) A crane lift had to be used to get the helicopter over the airport fence. (Id.) He testified that the helicopter's left door window was damaged; the ceiling was damaged by the bullet; the oil cooler fairing had to be repaired; and the oil cooler had to be replaced. (Id. 55.) The round also pierced the wiring for the helicopter. (Id. 56.) The parts needed to repair the helicopter were from France and Texas. (Id. 55-56.) The maintenance staff at Grand Forks was not capable of repairing the damage so a composite repair team had to come in from Great Falls, Montana. (Id. 57.)

The damaged helicopter was out of service for 47 days. (Evid. Hearing Tr. 57.) U.S. Customs and Border Protection had very limited air run operations during those 47 days because no other helicopter was available for use. (Id.)

According to Clark, it cost "[r]oughly 19,600" dollars to repair the damaged helicopter. (Evid. Hearing Tr. 57-58.) This figure includes the cost of transporting the damaged helicopter from Fosston to Grand Forks. (Id. 58.)

At the sentencing hearing, the Government submitted a document dated October 23, 2016, breaking down the helicopter repairs totaling $19,619.45. (See Sentencing Tr. 14.) U.S. Customs and Border Patrol claims that repair of the helicopter entailed 266.5 manhours, costing $7,195.50; parts costs of $10,134.37; travel costs of $1,789.58; and overtime costs of $500.00. This cost breakdown also appears in Paragraph 14 of the PSR, to which Defendant did not object.

Larson also submitted a Declaration of Victim Losses and a Financial Loss Statement reporting $300 in damage to his clothing and boots from the incident. (See Sentencing Tr. 13.) However, the Government has not requested that this additional $300 be included in the restitution amount in the amended Judgment.

B.  **Restitution Standard**

Under the Mandatory Victim Restitution Act ("MVRA"), "the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). It is undisputed that the MVRA applies in this case. (See, e.g., Plea Agreement ¶ 3(e).)

4

"Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). "The rules of evidence do not apply at sentencing, but information considered by the sentencing court must have sufficient indicia of reliability to support [its] probable accuracy." United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005) (citation omitted).

> The MVRA does not stipulate which party bears the burden of proving entitlement to an offset. The government bears the burden to prove the victim's loss, and the defendant bears the burden to prove financial resources and needs. On other matters, the burden 'shall be upon the party designated by the court as justice requires.' 18 U.S.C. § 3664(e).

United States v. Ruff, 420 F.3d 772, 775–76 (8th Cir. 2005). "In other words, while the government bears the burden of demonstrating the amount of the loss sustained as a result of the offense, the defendant bears the burden of establishing entitlement to an offset against that loss." United States v. Rindone, No. 4:15-CR-3083, 2017 WL 963176, at *3 (D. Neb. Mar. 10, 2017) (gathering cases). "Similarly, as long as the loss amount has an adequate evidentiary basis, the burden is on the defendant to present rebuttal evidence demonstrating that

5

the information is inaccurate or materially untrue." United States v. Khang Le, 695 F. App'x 781, 783 (5th Cir. 2017) (footnote omitted).

> [I]t is now firmly established that a unit of government directly and proximately harmed by a qualifying offense can be awarded restitution under the MVRA. Congress intended that restitution be a compensatory remedy from the victim's perspective. Therefore, government agencies, like private MVRA victims, should be limited to compensation for their actual losses.

United States v. Haileselassie, 668 F.3d 1033, 1036 (8th Cir. 2012) (citations omitted).

### C. Analysis of Defendant's Objections

Here, the Government has shown that Defendant's offense conduct of shooting the Government helicopter damaged the helicopter and caused harm to the victim, U.S. Customs and Border Protection. Defendant objects that the Court does not have jurisdiction to enter this restitution order more than 90 days after sentencing and that the Government has failed to adequately prove the amount of money spent to repair the helicopter.

#### 1. Jurisdiction

The Court holds that it has jurisdiction to enter this restitution order more than 90 days after sentencing. See Dolan v. United States, 560 U.S. 605, 611 (2010). Additionally, the amount of restitution requested by the Government

was included in the PSR, giving Defendant adequate notice of the amount of restitution requested.

### 2. Sufficiency of the Evidence

Defendant argues that the Government's restitution request simply relies on PSR Paragraph 14, which, in turn, merely provides a summary of the alleged losses and repairs associated with the damage to the helicopter. The Court notes that Defendant did not object to Paragraph 14 of the PSR. In any case, the Government's restitution request is supported by the evidence submitted during the hearings before the Court.

Defendant next claims that the evidentiary hearing testimony was too vague to support the requested restitution award. He asserts that any award for travel and part costs must be verified through invoices or receipts. While it is true that "general invoices . . . ostensibly identifying the amount of loss without further explanation are insufficient," Haileselassie, 668 F.3d at 1037 (citation omitted); it is also true that a victim's testimony "regarding its estimate of the loss caused by" the defendant's offense combined with the defendant's guilty plea admission regarding causing that damage is sufficient to support a restitution award amount. See United States v. Kay, 717 F.3d 659, 667 (8th Cir.

2013). The restitution amount can be proven through direct testimony; there is no requirement in the statute that the Government must provide receipts. See United States v. Adejumo, 777 F.3d 1017, 1020 (8th Cir. 2015). Here, victim representative Clark testified regarding what specific steps were required to repair the helicopter damaged by Defendant and further testified regarding the cost of those repairs. Defendant had the opportunity cross examine Clark regarding the steps taken to repair the helicopter and the amount of money spent to effectuate those repairs.

Defendant further asserts that the evidence provided shows that the requested loss is inflated. He asserts that "manhours" and "overtime" are not a loss to the Government because the Government simply paid its workers to do the jobs they are already paid to do. The Court rejects this argument because a government agency's "internal labor costs" are "a legitimate measure of actual loss." Haileselassie, 668 F.3d at 1037.

The Government provided an adequate evidentiary basis for the restitution requested. Defendant had the opportunity to test or rebut that evidence through cross examination at the evidentiary hearing and during the extended time that the Court left restitution open in order to allow Defendant to

review the requested repair costs. Defendant has not pointed to any evidence that would show that the Government's evidence "is inaccurate or materially untrue." Khang Le, 695 F. App'x at 783. Therefore, the Government's request is granted.

### 3. Defendant's Financial Circumstances

Defendant also asks that, based on his financial circumstances, advanced age, and lack of recent work history, he should only be required to make nominal payments with a waiver of interest. 18 U.S.C. § 3664(f)(3)(B). Based on Defendant's financial circumstances, and as the Court previously ordered in the original Judgment, the interest requirement is waived for the restitution and Defendant's payment schedule shall take into account his financial circumstances.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

> The Government's request for an Amended Judgment including restitution in the amount of $19,619.45 [Docket No. 152] is **GRANTED**.

Dated: September 5, 2018            s/ Michael J. Davis
                                    Michael J. Davis
                                    United States District Court